IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: WILTON ARMETALE, INC. aka WAPITA, INC., <br> Debtor | : <br> : **Chapter 7** <br> : **Case No. 16-16779-REF** <br> : |
| ARTESANIAS HACIENDA REAL S.A. de C.V. , <br> Plaintiff <br> vs. <br> NORTH MILL CAPITAL LLC and LEISAWITZ HELLER, <br> Defendants | : <br> : **Adversary No. 17-197-JKF** <br> : <br> : <br> : <br> : <br> : |

## MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7015 AND FEDERAL RULE OF CIVIL PROCEDURE 15 FOR LEAVE TO AMEND THE COMPLAINT IN THE FORM OF PLAINTIFF ARTESANIAS' PROPOSED SECOND AMENDED COMPLAINT

Plaintiff Artesanias Hacienda Real S.A. de C.V. ("Artesanias"), by and through its undersigned counsel, hereby moves this Honorable Court pursuant to Federal Rule of Bankruptcy Procedure 7015 and Federal Rule of Civil Procedure 15 and such other rules and law as may be applicable to amend its Complaint in the form of its accompanying, proposed Second Amended Complaint ("SAC") in order to reflect newly-obtained discovery and include two new causes of action (for aiding and abetting fraud/fraudulent concealment) revealed through newly-obtained discovery. Artesanias represents:

1. This action by plaintiff judgment creditor Artesanias arises from and relates to a scheme of bribery, breaches of fiduciary duty, fraudulent misrepresentations and concealment, fraudulent transfer, and related misconduct knowingly and intentionally arranged, assisted, joined, effectuated and participated in by defendants North Mill Capital LLC ("North Mill") and Leisawitz Heller with fiduciary Ivan Jeffery ("Jeffery"), then sole director, officer and fiduciary of insolvent corporate debtor Wilton Armetale,

1

Inc. ("Wilton"), and with Gordon Brothers Commercial & Industrial LLC ("Gordon Brothers"), to divert assets from insolvent debtor Wilton for the benefit of North Mill, Gordon Brothers, Jeffery and Leisawitz Heller and to fraudulently conceal that diversion, with the intent and illegitimate purpose of hindering, delaying and prejudicing creditor Artesanias' ability to enforce and collect obligations Wilton was adjudicated to owe Artesanias and Artesanias' recorded judgment lien on Wilton's real estate.

## JURISDICTION AND VENUE

2. This action was originally filed and being heard in the U.S. District Court for the Eastern District of Pennsylvania as Case No. 5:16-cv-04197-EGS; by that Court's July 12, 2017 Order was referred to this Bankruptcy Court, pursuant to 28 U.S.C. §157, as a core or related proceeding; and Leisawitz Heller's Petition for Writ of Mandate to have this case remanded to the District Court was denied by November 16, 2017 Order of the U.S. Court of Appeals for the Third Circuit.

3. The District Court's July 12, 2017 Order ruled this Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157.

4. Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409(a).

5. The District Court's July 12, 2017 Order ruled this adversary proceeding is a core or related proceeding pursuant to 28 U.S.C. §157.

6. In light of the District Court's July 12, 2017 Order, this adversary proceeding is being pursued in accordance with the Federal Rules of Bankruptcy Procedure.

The Parties/Key Personnel.

7. Plaintiff Artesanias is a Mexican company [SAC ¶7].

2

8. Wilton is a Pennsylvania corporation, formerly located in Mt. Joy, Pennsylvania, but whose current address has changed to and is c/o Barry L. Goldin, Esq., 3744 Barrington Drive, Allentown, PA, 18104-1759 [SAC ¶8].

9. At all material times from 2010 until March 7, 2016, Wilton purchased, from Artesanias and other vendors, tableware which Wilton resold to and through department and specialty stores, its own outlet store, and other channels of distribution [SAC ¶9].

10. Wilton conducted its business at its Mt. Joy Pennsylvania real estate which Wilton owned, and which was appraised in March 2015 and re-confirmed in December 2015 as having an "as is" fair market value of $895,000 [SAC ¶10].

11. Wilton was insolvent by October 1, 2015 and thereafter [SAC ¶¶13-21].

12. Jeffery was sole shareholder, sole director, officer (Secretary and Treasurer), and fiduciary of Wilton from his acquisition on or about September 1, 2010 of all shares of Wilton through the May 2016 disposition of all Jeffery's shares of, and removal of Jeffery as of May 11, 2016 from all offices and positions with, Wilton [SAC ¶11].

13. Upon a Pennsylvania corporation (and thus Wilton) becoming and so long as it is insolvent, the fiduciary duties of its directors, officers, and controlling shareholders (including among others duties of care and loyalty) extend not only to the corporation, but also to its creditors. Thus, at all pertinent times after Wilton's insolvency (Wilton having become insolvent by October 1, 2015 and being insolvent at all pertinent times thereafter), Wilton's fiduciary Jeffery was also fiduciary to Wilton's creditor Artesanias.[1]

---

[1] *See Committee of Unsecured Creditors v. Baldwin (In re Lemington Home for Aged)*, 659 F.3d 282, 290 (3rd Cir. 2011) (citing *Citicorp Venture Capital Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 987-88 (3rd Cir. 1988)); *Voest-Alpine Trading USA v. Vantage Steel Corp.*, 919 F.2d 206, 217 n.25 (3rd Cir. 1990); *In re Total Containment, Inc.*, 335 B.R. 589, 604-605 (Bkrtcy E.D. Pa. 2005).

3

14. From September 2010 through May 10, 2016 the Leisawitz Heller law firm was counsel for both Wilton and Jeffery and thereafter has continued to be Jeffery's counsel [SAC ¶12].

15. North Mill, which was a lender to Wilton and had a security interest on Wilton assets, entered into a March 7, 2016 Participation Agreement Amendment with Jeffery (the "Participation Agreement Amendment"), arranged by Leisawitz Heller, pursuant to which North Mill unlawfully bribed Wilton's fiduciary Jeffery to agree to a below-market and commercially unreasonable sale of all Wilton's non-real estate assets to Gordon Brothers for $725,000 and payment of all that $725,000 directly to North Mill, so leaving Wilton without funds or resources to maintain or protect Wilton's valuable Mt. Joy real estate, in consideration for which North Mill agreed in that Participation Agreement Amendment to pay Jeffery 20% of net proceeds received from North Mill foreclosure on and resale of Wilton's Mt. Joy real estate [SAC ¶13].[2]

16. Gordon Brothers, a Delaware limited liability company, on March 7, 2016 purchased all Wilton's non-real estate assets for the below-market and commercially unreasonable purchase price of only $725,000, all of which was paid to North Mill, although knowing Wilton's fiduciary Jeffery had been bribed by North Mill to approve that $725,000 sale; Gordon Brothers almost immediately resold and collected from

---

[2] Pennsylvania's commercial bribery statue, 18 Pa.C.S.A. §4108(a) states:
> "An employee, agent or fiduciary commits a misdemeanor of the second degree when, without the consent of his employer or principal, he solicits, accepts, or agrees to accept any benefit from another person upon agreement or understanding that such benefit will influence his conduct in relation to the affairs of his employer or principal."

Such commercial bribery also violates 18 U.S.C. §1952 which renders criminal any travel in or use of mail or facility of interstate commerce with intent to promote, carry on or facilitate the promotion or carrying on, of any act of bribery in violation of state law.

4

Wilton's assets proceeds of $1,436,063, resulting in an almost immediate profit to Gordon Brothers of more than $457,794 (reflecting Gordon Brothers' purchase for little or no consideration of Wilton's brand name, trademarks and intellectual property rights which Gordon Brothers so resold for $350,000 and of Wilton's furniture, machinery and equipment Gordon Brothers resold for $24,520) [Goldin Aff. ¶¶85-93; SAC Ex. 34].

The Previously Withheld and Newly-Discovered Evidence.

17. Beginning May 12, 2016, Wilton's new management and Artesanias served letters requests and Subpoenas seeking delivery by Jeffery at Leisawitz Heller (which had been counsel for Wilton and Jeffery and continued to serve as Jeffery's counsel) of emails and other documents relating to and concerning (among other things) Wilton and offers for and sale of Wilton assets [SAC ¶103, Ex.s 37 & 38].

18. Together with those May 2016 document requests, Leisawitz Heller also received May 2016 letters of Wilton's new management waiving Wilton's attorney-client privilege with respect to documents sought [SAC ¶104, Ex.s 37 & 38].[3]

19. In response to those May 2016 document requests, Leisawitz Heller (then counsel for Jeffery) delivered a June 24, 2016 letter declining to produce Wilton documents on grounds of Jeffery assertion of purported attorney-client privilege as to Wilton documents [SAC ¶105, Ex. 39], although Jeffery had been removed as a director and officer of Wilton and although Leisawitz Heller had received written waiver by

---

[3] *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-352 (1985), corporation's new management had power to waive attorney-client privilege over objection of prior management; *Maleski v. Corp. Life Ins. Co.*, 641 A.2d 1 (Pa. Commw. 1994) under Pennsylvania law new management of insolvent corporation has right to waive corporate attorney-client privilege over objection of former management; *Gilliland v. Geramita*, 71 Fed. R. Evid. Serv. 285, 2006 WL 2642525 at *3 (W.D. Pa. 2006).

5

Wilton's new management of Wilton's attorney-client privilege as to those documents sought [SAC ¶¶103-104, Ex.s 37 & 38].

20. Jeffery and his counsel Leisawitz Heller so continued to withhold and instead concealed important responsive documents with respect to Wilton for more than a year and until after Artesanias obtained orders to compel delivery of those documents, as described below [SAC ¶106].

21. Meanwhile, on August 22, 2016 at Jeffery's initial 341 proceedings, Jeffery's counsel Leisawitz Heller, in Jeffery's presence, misrepresented on the record that at the time of the sale of Wilton's non-real estate assets to Gordon Brothers there were "no other suitors" for Wilton. Eden Bucher of Leisawitz Heller so misrepresented on that record as follows [Goldin Aff. ¶21, Tr. 47:1-4]:

> "MS. BUCHER: ... Then North Mills finds Gordon Brothers and says, sell the assets to Gordon Brothers. We had no other suitors at that point for the company [Wilton] and that's when the sale went through.
>
> MR. KOTTLER [counsel for the Jeffery Chapter 7 Trustee]: And that's for all of the non-real property assets, correct?
>
> MS. BUCHER: Correct."

22. On November 28, 2016, North Mill's Senior Vice President Tom Siska testified in court in the Wilton bankruptcy proceedings, and therein misrepresented under oath, that there had been no letters of intent or offers for Wilton's non-real estate assets from anyone other than the $725,000 offer from Gordon Brothers. Siska so testified [Goldin Aff. ¶22, Nov. 28, 2016 Tr. at 21:11-18]:

> Q [North Mill counsel]. And what ultimately happened to that possible buyer of Wilton as a going concern?
>
> A [Siska]. By the middle of January the consultant [Mike Yayac] and Wilton, the consultant for Wilton and Wilton's president, Ed Leibensperger, both came to us

6

and said look, you know, they won't they're not signing an LOI [letter of intent] and it's looking like it could be another three to six weeks for that to happen."

23. At the November 28, 2016 Wilton bankruptcy proceedings, North Mill's Senior Vice President Tom Siska further misrepresented and so testified falsely under oath that no company made an offer to Wilton that was equal to or greater than Gordon Brother's offer (although Tom Siska and North Mill knew of the substantially higher Vagabond House letters of intent and offers for Wilton's non-real estate assets) [Goldin Aff. ¶23, Nov. 28, 2016 Tr. at 24:6-12]:

> "Q [North Mill counsel]. Are you aware of the amount that Wilton sold its assets to Gordon Brothers for?
>
> A [Siska]. I think it was $725,000.
>
> Q. And to your knowledge, did any other company make an offer to Wilton that was equal to or greater than the offer made by Gordon Brothers?
>
> A. No."

24. At the November 28, 2016 Wilton bankruptcy proceedings, North Mill's Senior Vice President Tom Siska further misrepresented and so falsely testified under oath that North Mill had not made the first contact with Gordon Brothers and that the decision to liquidate Wilton was made by Wilton's President Ed Leibensperger [Goldin Aff. ¶24, Nov. 28 2016 Siska Tr. at 22:18-23:5]:

> "Q [North Mill counsel]. And out of North Mill and Wilton, who made the first contact with Gordon Brothers?
>
> A. We [North Mill] didn't have any contact with Gordon Brothers other than them contacting us.
>
> Q. And did Wilton ultimately liquidate its assets?
>
> A. Yes.
>
> Q. Who did it liquidate to?

7

> A. It chose Gordon Brothers.
>
> Q. So who made the decision to liquidate to Gordon Brothers over the other potential referred companies that you referred Wilton to?
>
> A. Wilton. Ed Leibensperger."

25. During March 24, 2017 proceedings in the Bankruptcy Court with respect to Jeffery's bankruptcy case, Leisawitz Heller further misrepresented on the record that there had been no offer for, and that no one in the industry had wanted, Wilton's non-real estate assets other than Gordon Brothers, as follows [Goldin Aff. ¶25, March 24, 2018 Tr., Eden Bucher of Leisawitz Heller at 18:6-15]:

> "There was no buyer coming out of the woodwork to buy this property for more than North Mill Capital was – and when I say property I mean business assets. ... There were huge marketing packages that went out to all of the other people in this industry that nobody wanted."

<u>Recent Court-Ordered Discovery Reveals That Contrary to Defendants' Misrepresentations, Vagabond House Had Offered to Purchase Wilton's Non-Real Estate Assets for an Estimated Purchase Price of $1,232,000 (More Than $500,000 More than Gordon Brothers Paid for Those Assets) and That Gordon Brothers Almost Immediately Resold Those Assets for a Nearly $450,000 Profit</u>.

26. With leave of Court, Artesanias filed its First Amended Complaint in the instant action against North Mill and Leisawitz Heller on January 3, 2017 (and thus before Artesanias obtained discovery revealing the falsity of North Mill testimony and of Leisawitz Heller's misrepresentations to Artesanias and the Court).

27. In light of defendants' refusal to produce responsive documents, Artesanias served a document subpoena on Strategic Resources, Inc., the company which had been engaged by Wilton to assist the sale of Wilton's assets [Goldin Aff. ¶27].

28. After Strategic Resources refused to comply with Artesanias' discovery requests, Artesanias filed in this action a Motion to Compel against Strategic Resources

and so obtained April 17 and May 1, 2017 Orders from Magistrate Judge Marilyn Heffley ordering Strategic Resources to produce those documents [Goldin Aff. ¶28, Ex.s BG-1 & BG-2].

29. In response to Judge Heffley's April 17 and May 1, 2017 Orders, Strategic Resources thereafter produced documents revealing Vagabond House had made a February 15, 2016 offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000 [Goldin Aff. ¶29].

30. Artesanias also served and pursued on Vagabond House (a company located in California), but Vagabond House refused to comply with, a Subpoena for documents as to Vagabond House's offer for Wilton's assets [Goldin Aff. ¶30].

31. Artesanias then filed a Petition to Compel against Vagabond House in federal District Court in California. That Court granted Artesanias' Petition and so issued a September 8, 2017 Order holding Vagabond House in contempt; requiring Vagabond House produce all documents sought and a specified Declaration; and awarding Artesanias attorneys' fee and costs [Goldin Aff. ¶31, Ex. BG-5].

32. In response to that Order, Vagabond House during October 2017 delivered responsive documents to Artesanias as to Vagabond House's February 15, 2016 offer to purchase Wilton's assets for $1,232,000 and a Declaration of Vagabond House's President confirming "Vagabond House had sufficient cash on hand and ability to pay the $1,230,000 offer to purchase certain of Wilton's non-real estate assets (including trademarks, inventory and receivables)" [Goldin Aff. ¶32, Ex. 14D].

33. Artesanias also moved to compel production of documents which defendant Leisawitz Heller had been wrongfully withholding. Judge Marilyn Heffley's June 2,

9

2017 Memorandum Opinion and Order found Leisawitz Heller improperly withheld, and so ordered Leisawitz Heller to produce, those documents [Goldin Aff. ¶33, Ex. BG-3].

34. Subsequently, on June 30, 2017, Leisawitz Heller finally produced certain of the documents improperly withheld, confirming Leisawitz Heller's receipt and awareness of the Vagabond House offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000 [Goldin Aff. ¶34, Ex. BG-4].

35. On May 30, 2018, Leisawitz Heller belatedly produced additional documents as to Vagabond House's offer to purchase Wilton assets [Goldin Aff. ¶38, Ex. BG-7].

36. Artesanias then subpoenaed and in August 2018 deposed Wilton's former President Ed Leibensperger in a related adversary action against Jeffery [Adv.# 17-28]. During his deposition, Mr. Leibensperger authenticated certain documents which had been belatedly produced to Artesanias with respect to (among other things) Vagabond House's offer for Wilton's non-real estate assets and related matters. [Goldin Aff. ¶39].

37. Meanwhile, Artesanias also subpoenaed documents from, and then obtained an Affidavit of the Managing Director of Gordon Brothers, Jim Lightburn – revealing (among other things) the initial contact for purchase of Wilton's non-real estate assets came from North Mill (not from Wilton); Gordon Brothers paid the entire $725,000 purchase price for Wilton's assets directly to North Mill (none paid to Wilton); and Gordon Brothers almost immediately resold and collected from those assets the sum of $1,436,063, resulting in profit to Gordon Brothers of $457,794 --a more than 60% profit in a short time on its $725,000 purchase of Wilton assets [Goldin Aff. ¶40, SAC Ex. 34].

38. Artesanias' proposed Second Amended Complaint thus includes factual allegations rewritten in their entirety to reflect discovery of documents wrongfully

withheld which were newly obtained by federal court compulsion orders (including orders against defendant Leisawitz Heller and against non-party witnesses Strategic Resources and Vagabond House), the affidavit of Gordon Brothers' Managing Director, and August 2018 testimony in a related case of non-party witness Ed Leibensperger.

39. In turn, those previously withheld and newly-produced documents referenced in and supporting the proposed Second Amended Complaint reveal (among other things):

(i) North Mill (through false testimony of its Senior Vice President Tom Siska to the Court) and Leisawitz Heller (through misrepresentations of Leisawitz Heller to the Court and by not producing responsive documents) sought to fraudulently conceal the much higher $1,232,0000 Vagabond House offer for Wilton's non-real estate assets;

(ii) previously undisclosed misconduct of North Mill and Leisawitz Heller in arranging the below-market and commercially unreasonable sale of Wilton's non-real estate assets for only $725,000 to Gordon Brothers (rather than $1,232,000 offered by Vagabond House), all $725,000 being paid by Gordon Brothers directly to North Mill (leaving Wilton without funds or resources to maintain or protect its valuable Mt. Joy real estate which had been appraised as having an "as is" fair market value of $895,000);[4] and

(iii) related misconduct of Leisawitz Heller and North Mill in arranging and of North Mill in entering into a bribe for Jeffery (the sole director, officer and fiduciary of insolvent corporation Wilton and thus of Wilton's creditors, such as Artesanias) of the concurrent Participation Agreement Amendment in which, North Mill agreed to pay fiduciary Jeffery 20% of net proceeds of North Mill foreclosure on and resale of Wilton's

---

[4] *Matter of Estate of Evasew*, 526 Pa. 98, 584 A. 2d 910 (1990) (breach of fiduciary duty and constructive fraud when fiduciary pursued inadequate offer rather than substantially higher value of the property)].

11

real estate, in consideration for fiduciary Jeffery's approval of the below-market and commercially unreasonable sale of Wilton's non-real estate assets for only $725,000 to Gordon Brothers (rather than $1,232,000 offered by Vagabond House), all $725,000 being paid by Gordon Brothers directly to North Mill (leaving Wilton without funds or resources to maintain or protect its valuable Mt. Joy real estate) [see fn. 2 above].

40. As a result of the knowing and intentional substantial assistance rendered by North Mill and Leisawitz Heller to Jeffery, and their conspiracy with Jeffery and Gordon Brothers, in the misconduct against Artesanias, Artesanias was deprived the benefit of its rights and claims reflected in its $920 645.38 District Court Judgment against Wilton and its recorded judgment lien on Wilton's real estate from which to be paid its Judgment.

41. In light of the previously concealed and newly-obtained discovery with respect to North Mill's and Leisawitz Heller's substantial knowing and intentional assistance to and participation in fiduciary Jeffery's fraudulent misconduct against Artesanias, Artesanias has included in its SAC new causes of action against North Mill and Leisawitz Heller for aiding and abetting Jeffery's fraud/fraudulent concealment (see Third and Fourth Causes of Action in the Second Amended Complaint).[5]

42. Federal Rule of Bankruptcy Procedure 7015 states that Federal Rule of Civil Procedure ("FRCP") 15 "applies in adversary proceedings"; in turn, FRCP 15(a)(2) states a party may amend its pleading with "court's leave", and "court should freely give leave when justice so requires".

---

[5] Pennsylvania recognizes civil claims against law firms and others for conspiracy to commit fraud and for aiding and abetting fraud. *See, for instance, Killbride Investments Limited v. Cushman & Wakefield of Pennsylvania, Inc.*, 294 F.Supp. 3d 369, 377-385 (E.D. Pa. Feb. 20, 2018) and the case law cited therein.

43. In *Mullin v. Balicki*, 875 F.3d 140 (3rd Circ. 2017), the Third Circuit Court of Appeals (reversing trial court denial of leave to file a third amended complaint) stated that, in determining whether to grant or deny leave to amend, courts are guided by the factors cited in *Foman v. Davis*, 371 U.S. 178 (1962) -- namely whether there has been (i) undue delay, (ii) bad faith or dilatory motive on the part of movant, (iii) repeated failure to cure deficiencies by amendments previously allowed, (iv) prejudice to the opposing party, and (v) futility. The Third Circuit (*Id.* at 149-15) wrote "All factors are not created equal, however, as prejudice to the non-moving party is the touchstone for the denial of an amendment.", citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3rd Cir. 2006).

44. <u>No Undue Delay</u>. Artesanias has not engaged in undue delay. Rather, substantial expense was incurred and substantial time expended by Artesanias as it was obliged to seek and obtain district court compulsion orders for documents subpoenaed from, but wrongfully withheld by, witnesses Strategic Resources, Inc. and Vagabond House, and also compulsion orders for documents wrongfully withheld by Leisawitz Heller [Goldin Aff. ¶¶27-33, Ex.s BG-1 through BG-5]. Documents then belatedly so produced revealed (among other things) the previously concealed February 15, 2016 Vagabond House offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000 (more than $500,000 higher than the $725,000 purchase price for which those assets were sold on March 7, 2016 to Gordon Brothers as part of the scheme in which Leisawitz Heller arranged for fiduciary Jeffery to be paid, and North Mill concurrently agreed on March 7, 2016 to pay Jeffery, a bribe of 20% of net proceeds of North Mill foreclosure on and resale of Wilton's real estate) [Goldin Aff. ¶¶29 & 42].

13

45. Proceedings were also delayed by (among other things) District Court referral of this case to the Bankruptcy Court, and Leisawitz Heller's ensuing unsuccessful Petition for Writ of Mandate to the Third Circuit Court of Appeals [Goldin Aff. ¶44].

46. Later, at August 2018 deposition of Wilton's former President Leibensperger, he authenticated many of the previously concealed documents. [Goldin Aff. ¶39].

47. <u>No Bad Faith or Dilatory Motive of Plaintiff Artesanias</u>. There has been no bad faith or dilatory motive of plaintiff Artesanias. Rather, it has been necessary for Artesanias to overcome the refusal of witnesses and Leisawitz Heller to timely and properly produce documents by seeking and obtaining multiple compulsion orders – Artesanias so incurring the delays and costs inherent in obtaining, from Judge Heffley in this action, two compulsion orders against Strategic Resources to produce documents; from the District Court in California a compulsion and sanction order against Vagabond House to produce documents; and from Jeffery Heffley in this action, further orders for production of documents defendant Leisawitz Heller wrongfully withheld.

48. <u>No Repeated Failure to Cure Deficiencies</u>. Artesanias has not been found to have any repeated failure to cure complaint deficiencies. Rather, newly-obtained evidence and resulting allegations in the Second Amended Complaint bolster claims previously asserted by plaintiff Artesanias as to defendants' misconduct; demonstrate defendants' prior testimony and representations to the Court to have been knowingly and intentionally false; and further substantiate defendants' role, substantial assistance to, participation in, and concealment of the misconduct for which relief is now sought.

49. <u>No Prejudice to Defendants</u>. Defendants are not prejudiced. No depositions have been taken in this action, and discovery has not been completed. [Goldin Aff. ¶49].

Rather, defendants should not be permitted to benefit from their false testimony in and misrepresentations to the Court as to their misconduct, and their withholding and concealment of evidence which would have revealed their misconduct.

50. No Futility. Artesanias properly adds and asserts the claims, allegations, and pleadings in its SAC. See for instance fn. 5 above, referencing *Killbride Investments Limited v. Cushman & Wakefield of Pennsylvania, Inc., supra*, 294 F.Supp. 3d at 384-385 and case law cited therein.

51. Prejudice to Plaintiff. The Third Circuit observed in *Mullin, supra*, at 150, that a court may ground permission to amend the complaint on "the prejudice denying leave to amend would cause to the plaintiff". Plaintiff Artesanias would be so prejudiced by denial of leave to amend to reflect previously withheld discovery which belies defendants prior false testimony and misrepresentations to Artesanias and to the Court. Plaintiff obtained that discovery only through costly and time-consuming persistence in (among other things) pursuing withheld documents by subpoenas on and compulsion orders for production of those documents from, non-party witnesses, and also by seeking and obtaining compulsion orders against defendant Leisawitz Heller [Goldin Aff. ¶51].

52. Accordingly, plaintiff Artesanias respectfully requests an order that this Court grant Artesanias leave to file and proceed with Artesanias' Second Amended Complaint accompanying this Motion to Amend.

Dated: September 28, 2018    /s/ Barry L. Goldin
BARRY L. GOLDIN, ESQ. (PA #58692)
*Attorney for Plaintiff Artesanias Hacienda Real, S.A. de C.V.*
3744 Barrington Drive
Allentown, PA 18104-1759
Tel: 610-336-6680        Fax: 610-336-6678
Email: barrygoldin@earthlink.net

HAC80923.3MEMAMEND